A02A0723. PINEY GROVE BAPTIST CHURCH v. GOSS.
(565 SE2d 569)

BLACKBURN, Chief Judge.

In this personal injury action, Piney Grove Baptist Church (Church), an unincorporated association, appeals the trial court's

---

denial of its motion for summary judgment against Leslie Keith Goss, contending that the trial court erred by: (1) allowing Goss, a member of the unincorporated association, to sue the Church; (2) finding that an issue of fact remained as to whether the Church negligently selected and retained Goss's father, Vernon Goss, to oversee the construction of an addition to the Church building, thereby resulting in Goss's injury; and (3) finding that an issue of fact remained regarding the Church's superior knowledge of an allegedly faulty platform used during construction. For the reasons set forth below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewing the evidence in this light, the record shows that the Church decided to construct a new fellowship hall on its property. After receiving bids from several construction companies, the Church decided that it lacked funds to hire an outside firm, and volunteers from the congregation were asked to perform the construction. Goss's father was ultimately chosen to oversee the construction project, and with a group of volunteers from the congregation, Goss's father began work on the new addition.

During construction, the volunteers discovered that scaffolding was needed to finish the project. Rather than purchase scaffolding, however, Goss's father designed and built a platform instead. In order to stabilize this makeshift platform, it, in turn, was nailed to the new walls which were under construction. When Goss climbed on top of this platform, it pulled away from the wall and collapsed, and Goss sustained numerous injuries to his feet, legs, and back. Goss subsequently brought suit against the Church on the basis of premises liability and respondeat superior, and the Church, in turn, filed a motion for summary judgment, which was denied. The Church now appeals this denial.

1. The Church contends that Goss was prohibited from bringing suit against it pursuant to *Gilbert v. Crystal Fountain Lodge*,[2] arguing that this case mandates that a member of an unincorporated

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] *Gilbert v. Crystal Fountain Lodge*, 80 Ga. 284 (4 SE 905) (1887).

association cannot sue that corporation under any circumstances. We disagree.

In 1959, our legislature added OCGA § 9-2-25 to the Georgia Code. This Code section states: "Actions may be maintained against and in the name of any unincorporated organization or association for any cause of action for or upon which the plaintiff therein may maintain such an action against the members of the organization or association." OCGA § 9-2-25 (a). The statute goes on to mandate: "The organization or association shall be suable in any cause of action." OCGA § 9-2-25 (c). The statute also points out that

> [w]here a judgment in such actions is rendered in favor of the plaintiff against the organizations or associations, the property of the organization or association shall be liable to the satisfaction of the judgment. No such judgment shall be enforced against the individual property of any member of an unincorporated association, unless the member has personally participated in the transaction for which the action was instituted and has been served with process as provided by law.

OCGA § 9-2-25 (d).

The clear implication underlying this statute is that, unlike a partnership, an unincorporated association may be treated as a separate legal entity from its members. Both the association and its individual members are thereby acknowledged to have separate rights and interests. The codification of this legal duality directly undermines the Church's argument that no Church member could bring suit against it under any circumstances.

Moreover, *Gilbert*, supra, which predates OCGA § 9-2-25, is distinguishable from the case at hand. In *Gilbert*, a minister sued a mutual aid association of which he was a member for slander. Our Supreme Court held:

> If, as the declaration alleges, *the association was a partnership*, the plaintiff was a member of it; and after diligent search, we have been unable to discover any authority supporting the theory that a man can slander himself, either when he speaks directly as an individual, or when he speaks indirectly through a partnership of which he is a member. Upon principle, we do not see how he could charge the partnership assets with the damages that might be recovered, he having an interest in the assets as part owner of the same. Nor can we see how he can escape the general rule that, in an action at law against a partnership, all the partners, so

far as the partnership assets are involved, must be defendants. That rule, applied to this case, would require the plaintiff to sue himself. The equity powers of the court cannot be invoked to overcome this obstacle, for a court of equity has not, nor ever had, jurisdiction to decree damages for defamation or slander.

(Emphasis supplied.) Id. at 285.

There is no evidence in this case that the Church operated as a partnership. Moreover, we do not think that the sort of "partnership assets" referred to in *Gilbert* would include a comprehensive insurance policy such as the one at issue in this case. If it did, it would lead to the absurd result that each congregant of the Church would have to purchase an individual policy specifically covering his or her conduct on Church grounds. Here, the Church purchased the policy to protect both visitors and its members. The overly technical application of *Gilbert* proposed by the Church would largely make that insurance policy a nullity for congregants, despite the fact that their dues maintain the policy. We cannot condone such an unnecessary forfeiture.

2. The Church argues that the trial court should have granted its motion for summary judgment regarding Goss's claim based on the negligent hiring of his father to act as construction foreman.

> Pursuant to OCGA § 34-7-20, an employer must exercise ordinary care in the selection of employees, must not retain them after knowledge of incompetency, and must warn other employees of dangers incident to employment that the employer knows or ought to know but which are unknown to the employee. In order to sustain a claim for negligent hiring and retention, a claimant must show that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury. Proof of such propensity must consist of evidence substantially related to the injury-causing conduct. Generally, the determination of whether an employer used ordinary care in hiring an employee is a jury issue.

(Citations and punctuation omitted.) *Tecumseh Products Co. v. Rigdon.*[3] These principles also apply where an organization solicits volunteers to perform projects on its behalf. See, e.g., *Big Brother/Big Sister &c. v. Terrell.*[4]

---

[3] *Tecumseh Products Co. v. Rigdon*, 250 Ga. App. 739, 740 (1) (552 SE2d 910) (2001).
[4] *Big Brother/Big Sister &c. v. Terrell*, 183 Ga. App. 496 (359 SE2d 241) (1987).

In the light most favorable to Goss, the evidence presents a question of fact whether the Church negligently selected his father as foreman. It is undisputed that, prior to appointing Goss's father to manage the construction project, the Church made no attempt to investigate his qualifications in any way. When Goss's father volunteered, the Church merely accepted, without further inquiry.

And, although the record indicates that Goss's father had some experience with residential construction, a question of fact nonetheless remains regarding his competence to undertake a project such as the one at issue. Goss's father, himself, testified that he had "no background, experience, education, or training in commercial construction." Keith R. Breedlove, a residential and commercial builder, testified that "[a] contractor with limited residential experience is not necessarily competent to complete a commercial construction project (such as a church addition)." In addition, Thomas M. Moore III, an engineer, reviewed the structure of the platform designed by Goss's father and concluded that it was "wholly insufficient for its intended purpose." This testimony clearly shows that a question of fact remained regarding the competence of Goss's father.

3. Finally, the Church contends that the trial court should have granted summary judgment in its favor regarding Goss's claim based on the law of premises liability. Specifically, the Church argues that Goss had equal knowledge of the danger posed by the platform from which he fell.

As an initial matter, premises liability cases are not susceptible to summary adjudication except where the evidence is "plain, palpable, and undisputed." *Robinson v. Kroger Co.*[5] This is not such a case.

> An owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge. To recover for injuries sustained in a slip-and-fall action, therefore, the invitee must prove (1) that the owner had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard,

---

[5] *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997).

despite the exercise of ordinary care, due to actions or conditions within the control of the owner.

(Citations and punctuation omitted.) *Gunter v. Patterson Bank.*[6]

Here, Goss's father testified that the platform which collapsed was "entirely of [his] design and choosing, and [he] directly oversaw its erection." Prior to ascending the platform, Goss asked his father if it was safe, and his father assured him that the structure could support his weight. Goss then mounted the platform and fell. This evidence presents a question of fact whether the Church, through Goss's father acting as foreperson, negligently created a hazard on the property which precipitated Goss's injuries.

Although the Church contends that Goss assisted his father in constructing the platform and, therefore, had equal knowledge of its hazardous condition, the record shows that Goss's assistance was minimal. It does not mandate a finding, as the Church contends, that Goss had equal knowledge of the platform's design flaws as the Church.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 15, 2002 — 

*Downey & Cleveland, Joseph C. Parker, Alan J. Gibson*, for appellant.

*Chandler & Britt, Luther H. Beck, Jr., Jackel, Rainey, Busch & Reed, Dana L. Jackel, Christopher L. Phillips*, for appellee.

---

[6] *Gunter v. Patterson Bank*, 247 Ga. App. 555, 557-558 (544 SE2d 735) (2001).