A05A0472. POOLE v. NORTH GEORGIA CONFERENCE OF THE METHODIST CHURCH, INC. et al.

(615 SE2d 604)

JOHNSON, Presiding Judge.

Greg Poole sued North Georgia Conference of the Methodist Church, Inc. ("North Georgia Conference"), Sixes United Methodist Church ("Sixes United"), and Daniel R. Warren for damages arising out of a breach of a confidential relationship by Warren, who, while acting as Poole's pastor at Sixes United, allegedly maintained a clandestine sexual relationship with Poole's wife while simultaneously counseling Poole regarding his marital problems. The trial court granted North Georgia Conference's and Sixes United's motion for summary judgment on Poole's claims of negligent hiring, negligent supervision, and negligent retention. Poole appeals, and we affirm because no genuine issues of fact remain for a jury, and North Georgia Conference and Sixes United are entitled to judgment as a matter of law.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[2]

So viewed, the evidence shows that Warren received his masters degree in Church Music in 1977, and worked in a music-related capacity with several Baptist churches from 1977 through 1993. In 1993, Warren applied for an appointment as a Methodist minister with the North Georgia Conference. The North Georgia Conference appointed Warren as a student pastor at Sixes United in May 1993. Warren was appointed probationary pastor in 1994 and full pastor in 1995.

Poole and his wife, Beth, began attending Sixes United in 1996 and joined in 1997. Warren entered into a sexual relationship with

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (503 SE2d 581) (1998).

Beth Poole in May or June 1998. That summer, Poole went to Warren for counseling regarding his marriage. Poole confided in Warren, revealing personal information such as his belief that his wife was having an affair, her apparent attempts to cover up the affair, and his wife's previous affair and its effect on Poole's marriage. During counseling, Warren suggested to Poole that his wife might be having an affair with a woman, subsequently pointed out that Poole's wife was spending a lot of time with Warren's wife, but then advised Poole that Poole's wife was probably not having an affair or was no longer having an affair. While counseling Poole about his marriage, Warren continued to have a sexual relationship with Poole's wife and concealed the relationship from Poole.

Poole discovered his wife was having an affair with Warren in April 1999. He brought Warren's participation in the affair to the attention of Sixes United officials in May 1999. At the suggestion of church officials, Poole then met with District Superintendent Dr. Jamie Jenkins. About a week later, at Jenkins' request, Poole sent Jenkins a written letter of complaint regarding Warren's conduct. Warren resigned shortly thereafter.

North Georgia Conference and Sixes United contend the First Amendment of the United States Constitution protects them from civil claims for the negligent hiring, supervision, and retention of a minister. We need not address this constitutional issue, however, because North Georgia Conference and Sixes United have demonstrated that there is no genuine issue of material fact as to Poole's claims.

> [A]n employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment. When an incompetent employee is hired for a particular position, it is reasonably foreseeable that such employee may injure others in the negligent performance of the duties of that position and accordingly an employer may be held liable for injuries caused by the negligent performance of the incompetent employee where evidence shows the employer knew or should have discovered that incompetency. However, absent a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff, the defendant employer is not liable to the plaintiff for hiring an employee with that particular incompetency.[3]

---

[3] (Citations and footnote omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 862 (1)

Furthermore, "an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."[4] Poole's contention is that he was injured through Warren's deception in the counseling relationship with Poole and the betrayal of those confidences to third parties.[5]

With regard to Poole's claim of negligent hiring, evidence shows Warren was interviewed by the District Committee of Ordained Ministry and then by the Conference Board of Ordained Ministry, and Poole does not show that during this process either body was informed of misconduct by Warren during his previous employment. As a prospective minister, Warren was also required to undergo a psychological evaluation. A psychologist with the Emory School of Medicine evaluated Warren in January 1995. The doctor's report did not show Warren was unfit to serve as a Methodist pastor and was generally positive. Poole points to nothing in the record showing that during the hiring process either North Georgia Conference or Sixes United became aware of anything in Warren's background indicating Warren was unsuited for employment as a minister or which put them on notice that further investigation was warranted.[6]

Poole contends that if church officials had interviewed some of Warren's former employers they would have discovered information indicating that he was not adequately trained as a counselor and had misused his position to take advantage of parishioners and counseled persons. Poole submitted affidavits from two of Warren's former employers. The affidavit of the Pastor of the Oak Grove Baptist Church shows that, while employed as the youth and music minister, Warren allegedly assaulted a young man by grabbing his testicles, telling the young man "to leave him alone." Warren, who was married at the time, also reportedly tried to date a "young adult lad[y] at the church." The Pastor of Parkwood Baptist Church, where Warren was

---

(596 SE2d 604) (2004). Accord *Patterson v. Southeastern Newspapers*, 243 Ga. App. 241, 245 (2) (533 SE2d 119) (2000) (appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment).

[4] (Citation omitted.) *Munroe*, 277 Ga. at 863 (1).

[5] In his complaint, Poole alleged that North Georgia Conference and Sixes United failed to investigate Warren's background to ensure he had not committed the crime of adultery. OCGA § 16-6-19. However, a spouse's cause of action for adultery and alienation of affections has been abolished in Georgia, OCGA § 51-1-17, and Poole apparently no longer claims he was legally injured by reason of the alleged adultery.

[6] See *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 753 (3) (a) (472 SE2d 532) (1996) (job interview process including psychological evaluation failed to place church on notice of minister's propensity to commit alleged injury).

employed as the minister of music, averred that a young parishioner accused Warren of touching her on the breast. The Pastor also averred that after the personnel committee declined to increase the compensation of the church pianist, Warren increased the pay of the church pianist out of his budget and in violation of church policy.

Even if North Georgia Conference and Sixes United had performed a background check which included interviews of Warren's former employers,[7] evidence does not show Warren's background information would have placed North Georgia Conference and Sixes United on notice that it was "reasonably foreseeable from [Warren's] 'tendencies' or propensities that [Warren] could cause the type of harm sustained by [Poole],"[8] which arose from Warren's alleged betrayal of his counseling relationship with Poole. Accordingly, we conclude that North Georgia Conference and Sixes United have demonstrated that no genuine issue of fact remains as to Poole's negligent hiring claim.

As to Poole's negligent supervision and retention claims, there is no evidence that officials at Sixes United or North Georgia Conference were aware of Warren's alleged misconduct until Poole brought it to their attention.[9] After Warren became pastor of Sixes United he was supervised by Jenkins, who was responsible for evaluating Warren's performance on an annual basis. A Sixes United parish member committee also evaluated Warren annually, and Warren was required to complete a yearly self-evaluation, and these evaluations were submitted to Jenkins. Jenkins reviewed the evaluations and then conducted an in-person interview. According to Jenkins, Warren received high marks on objective and subjective criteria while he was the pastor at Sixes United, and the evaluation process raised no negative issues associated with Warren.

---

[7] See, e.g., *Munroe*, supra, 277 Ga. at 864, n. 4 (a jury may find that employers who fill positions in more sensitive businesses without performing an affirmative background or criminal search on job applicants failed to exercise ordinary care in hiring suitable employees).

[8] Id. at 863 (1). See *Kelley v. Baker Protective Svcs.*, 198 Ga. App. 378 (401 SE2d 585) (1991) (absent a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff, the defendant employer is not liable to the plaintiff for hiring an employee with that particular incompetency).

[9] See *Bunn-Penn v. Southern Regional Med. Corp.*, 227 Ga. App. 291, 294 (2) (488 SE2d 747) (1997) (record contained no evidence which would authorize a jury to conclude that the hospital knew or should have known that employee was prone to commit alleged acts). Compare *Harper v. City of East Point*, 237 Ga. App. 375, 376-378 (2) (515 SE2d 623) (1999) (employing municipality knew or should have known of its police officer's tendency to sexually assault another person, where the officer had been involved with three sexually inappropriate encounters with female citizens), overruled in part, *Munroe*, supra at 863-864 (1) (disapproving the restrictive foreseeability standard requiring plaintiff show the defendant employer could have anticipated the particular tortious or criminal act that caused the plaintiff's injury).

When Poole raised negative allegations concerning Warren's conduct during the course of his employment, Jenkins reported the allegations to a bishop the same day he received the written complaint, and two days later the board of ministry suspended Warren from his pastoral duties. Jenkins then met with Warren, who admitted that Poole's allegations were true. Rather than face a church investigation, Warren surrendered his ministerial credentials. Accordingly, North Georgia Conference and Sixes United did not retain Warren after being notified of Warren's alleged incompetency.

To support his claim that North Georgia Conference and Sixes United were aware or should have been aware of Warren's behavior, Poole presented the affidavit of a Sixes United parishioner who averred that Warren gave her hugs which were "inappropriately long in duration." Poole also submitted the affidavit of the youth minister at Sixes United who averred to noticing an inappropriate relationship between Warren and Beth Poole in March 1999. However, neither affidavit shows that Warren's allegedly inappropriate actions were brought to the attention of North Georgia Conference or Sixes United, nor do they involve conduct showing that Warren had a tendency to engage in the type of tortious conduct which Poole claims caused his injury.[10] Based on the foregoing, we conclude North Georgia Conference and Sixes United have demonstrated that no genuine issue of fact remains as to Poole's claim that they negligently supervised and retained Warren.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 6, 2005.

*Stacy D. Barnett, Diane Cherry*, for appellant.
*Goodman, McGuffey, Lindsey & Johnson, Edward H. Lindsey, Jr., Benjamin M. Perkins, Mozley, Finlayson & Loggins, Anne M. Landrum*, for appellees.

---

[10] See, e.g., *Kelley v. Baker Protective Svcs.*, supra, 198 Ga. App. at 379 (for employer to be negligent in hiring and retaining any employee with violent and criminal propensities, it is necessary that employer knew or should have known of those dangerous propensities).