## A06A2349. UNDERBERG v. SOUTHERN ALARM, INC. et al.

### (643 SE2d 374)

MIKELL, Judge.

Kelly Underberg appeals from the grant of summary judgment to ADT Security Services South, Inc., d/b/a ADT Security Services, Inc. ("ADT"), and its authorized dealer, Southern Alarm, Inc., in her negligent hiring action. Underberg was kidnapped at gunpoint by Bert Fields, a convicted violent felon who had once worked for Southern Alarm as a "promotions representative" selling home security systems door-to-door. Southern Alarm did not perform a background check before hiring Fields, which would have revealed that he had been convicted of burglary and kidnapping in South Carolina in 1979, sentenced to life in prison, and paroled in 1995. In a lengthy order, the trial court reasoned that no act or omission of Southern Alarm or ADT could be found by a jury to be a proximate contributing cause of Underberg's injuries. We disagree and reverse.

On appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the moving party was entitled to judgment as a matter of law. This requires a de novo review of the evidence. Summary judgment is proper when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case.[1]

We are especially mindful in this case that "[e]ven slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented."[2] Giving Underberg the benefit of all favorable inferences, we are persuaded that she has presented some evidence, however slight, that Southern Alarm's failure to perform a background check on Fields was a proximate contributing cause of her kidnapping.

Viewed in its proper light, the evidence shows that Southern Alarm hired Fields as a "promotions representative" in November 2001. Kelley Clements, Southern Alarm's president and sole owner, deposed that promotions representatives were part-time employees

---

[1] (Citations and punctuation omitted.) *Dalton v. City of Marietta*, 280 Ga. App. 202-203 (633 SE2d 552) (2006). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] (Punctuation omitted.) *Dalton*, supra at 203, citing *Garrett v. NationsBank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997).

who "turned over constantly" and worked on commission. After two or three days of training, sometimes assisted by an individual from ADT's national office, these representatives were transported in a Southern Alarm van to large neighborhoods where they conducted door-to-door sales of ADT security systems.

Terry Wayne Beach, Jr., a former employee of Southern Alarm, testified that these workers were trained for one and one-half days. Beach, who accompanied the representatives in the van, testified that they were given a script to read to potential customers in order to gain entrance into their homes. They also were provided contracts, yard signs, and t-shirts. According to Beach, these workers were given the paperwork to close the sale themselves, although they had to call the office to run a credit check on the potential buyer. Beach testified that no background checks were performed on them because they were considered independent contractors and not employees. Beach recalled taking Fields and his wife in the van once or twice in November 2001 to canvass neighborhoods in Savannah, although he testified that he never made sales calls in Clyo, a town near Savannah where both Fields and Underberg resided.

Beach also submitted an affidavit in which he averred that promotions representatives were encouraged to contact friends and neighbors on their own time to sell the systems, and that Fields and his wife brought in at least one contract. There was no evidence, however, that Fields was paid a commission.

Mitchell Glenn Payne, who was Southern Alarm's general sales manager at the time of Underberg's abduction, testified that members of the promotions team were not authorized to enter a prospective buyer's home absent a background check; that ADT advised Southern Alarm that background checks were not required unless the worker was entering a home; that when Southern Alarm first opened in Savannah, background checks were conducted on promotions representatives; and that the practice was discontinued due to the "tremendous turnover" in those positions.

Underberg deposed that in the summer of 2001, she filled out a form at a National Night Out in Springfield and placed it in a box at a booth operated by Southern Alarm and ADT, although she was not positive that the box belonged to Southern Alarm. Underberg wrote her name, address, and telephone number on the form, which asked whether she was interested in having someone contact her about installing a security alarm system. According to Payne, Southern Alarm twice participated in National Night Out in Savannah, but not in Springfield.

Underberg further testified that on two occasions in November and early December, Fields knocked on her door and asked to come in and speak with her about an ADT system. She declined both times,

explaining that she was busy, and asked him to return another time. Fields left what Underberg described as a "general ADT form" during the first visit. Fields came to Underberg's home a third time, in December, but she was not at home. Underberg testified that during this period of time, Southern Alarm's name and telephone number appeared on her caller identification system "a lot," and Southern Alarm was the only ADT franchise that ever tried to contact her.

On the day of the kidnapping, February 6, 2002, Underberg deposed that she went home from work in the early afternoon to pick up medicine for her daughter. As usual, she parked in her garage and entered the house through an unlocked door, leaving the garage door up. While Underberg was straightening up her bedroom, she noticed Fields standing in the doorway. Underberg asked if she could help him. Fields responded by pulling out a gun and pointing it at her. He told her to sit on the bed. Fields asked Underberg whether she recognized him. She did not remember him until he identified himself as "the ADT salesman." Fields bound her with duct tape, placed her in her own car, and took her to South Carolina. After Underberg promised to give him $6,000, he drove her home to Clyo, and she took him to his house.

1. Underberg contends that the grant of summary judgment was error because Southern Alarm owed her a duty to perform a background check on Fields. Although the trial court did not address this issue in its order, Southern Alarm argued it on summary judgment, and we will consider it on appeal.[3]

The question is not only whether Southern Alarm owed a duty to Fields but whether it breached that duty. These are questions of fact that a jury must resolve. "The appropriate standard of care in a negligent hiring/retention action is whether the employer knew *or should have known* the employee was not suited for the particular employment."[4] Stated differently,

> a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff.[5]

---

[3] See *Butler v. Gary, Williams &c.*, 280 Ga. App. 207, 211 (3) (633 SE2d 614) (2006).

[4] (Punctuation and footnote omitted; emphasis in original.) *Western Indus. v. Poole*, 280 Ga. App. 378, 381-382 (3) (634 SE2d 118) (2006). See also *Sparlin Chiropractic Clinic v. TOPS Personnel Svcs.*, 193 Ga. App. 181 (1) (387 SE2d 411) (1989).

[5] *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004).

Moreover, "[w]hether or not an employer's investigative efforts were sufficient to fulfill its duty of ordinary care is dependent upon the unique facts of each case."[6] Thus, in *C. K. Security Systems v. Hartford Accident & Indem. Co.*,[7] it was held that a security service offering the use of its employees to patrol premises for the purpose of protecting persons and property "may have been duty bound to exercise a greater amount of care to ascertain [whether] its employees were" suited to perform the services in question.[8] Here, a jury could find that Southern Alarm owed a heightened duty to ascertain whether individuals it hired, even briefly, to enter homes of unsuspecting persons for the purpose of selling security systems were suited for this purpose. Generally, the determination of whether an employer used ordinary care in hiring an employee is a jury issue.[9] In the case at bar, "[w]e cannot say that the evidence adduced was sufficient to demand a finding as a matter of law that the defendant had exercised due care in screening the employee in question."[10]

In addition, a question of fact concerning Southern Alarm's duty to perform background checks on promotions representatives is raised by its Dealer Agreement with ADT. The Agreement states that Southern Alarm "represents and warrants that all of its employees utilized to perform services under this Agreement have successfully passed a drug screen and a criminal background check." "Representatives" are defined in the Agreement as "officers, directors, employees, and agents." Underberg argues that, as a promotions representative, Fields was an employee who was required to undergo a background check. Southern Alarm contends that promotions representatives are independent contractors, not employees, so that no duty to screen them arises under the Agreement.[11]

---

[6] Id. at 864 (2), n. 4. "Unsuitability is thus properly determined with reference to the particular position involved." (Citation omitted.) Id. at 862 (1), n. 2.

[7] 137 Ga. App. 159 (223 SE2d 453) (1976).

[8] Id. at 161 (2).

[9] Id. at 162 (2). See also *Sparlin*, supra at 182 (1). Accord *Tecumseh Products Co. v. Rigdon*, 250 Ga. App. 739, 741 (1) (552 SE2d 910) (2001) (motion for directed verdict properly denied where evidence showed that employer should have known of employee's violent propensities). Compare *Munroe*, supra at 865-866 (2) (summary judgment appropriate where defendant treatment facility hired a professional investigation service to perform a background check on employee who drugged and raped patient); *Kelley v. Baker Protective Svcs.*, 198 Ga. App. 378, 379 (401 SE2d 585) (1991) (summary judgment appropriate where background investigation performed on unarmed security guard who was involved in murder of plaintiff's son showed that guard had no record of criminal activity).

[10] (Emphasis omitted.) *C. K. Security Systems*, supra at 163 (2).

[11] See, e.g., *Palma v. Ga. Farm Bureau Ins. Co.*, 270 Ga. App. 333 (606 SE2d 341) (2004) (tests for determining whether worker is independent contractor or employee); *Davis v. Beasley Timber Co.*, 241 Ga. App. 706 (527 SE2d 221) (2000) (question of fact whether worker was independent contractor or employee).

We need not resolve the issue of Fields's employment status, however, because the deposition testimony of Timothy W. Breeden, southeast regional director for the ADT authorized dealer program, shows that even if promotions representatives were considered independent contractors, a jury question still exists as to whether they were properly screened. Although Breeden testified that he was unsure whether background checks had to be performed on independent contractors, he also testified that an individual who was empowered to sell ADT systems on behalf of an authorized dealer and had been given ADT promotional materials and sales contracts "probably" would be required to undergo one. In addition, when asked why ADT requires background checks, Breeden testified:

> A. Obviously we would want to filter out anyone that should not be selling security systems and putting folks at risk that should not be in a home. . . .
> Q. Would you agree that ADT would object to an individual with a prior conviction for kidnapping being provided training and materials and allowed to go door to door attempting to sell ADT home security systems? . . .
> A. Yeah, . . . if the dealer had knowledge of that, absolutely, we would object to that.
> Q. And the reason ADT requires background checks is so the dealer will have that type of knowledge, correct?
> A. That's correct.

Payne testified, in fact, that Southern Alarm did perform background checks on promotions representatives, until the turnover in those positions became too great. A jury might find from the testimony of Breeden and Payne both the existence of a duty and a breach thereof. "The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable."[12] As the evidence in the case at bar is neither plain, palpable, nor undisputable, the issues of whether Southern Alarm owed Underberg a duty to perform a background check on Fields and whether it breached that duty are matters incapable of summary adjudication.

2. The gravamen of this appeal is whether a jury could find that the failure to investigate Fields's background is a proximate cause of

---

[12] (Punctuation omitted.) *Munroe*, supra at 864 (2), citing *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (493 SE2d 403) (1997).

Underberg's abduction. We find that, although causation is attenuated, a genuine issue of material fact remains.

"The causation element requires showing that, given the employee's dangerous propensities, the victim's injuries should have been foreseen as the natural and probable consequence of hiring the employee."[13] Causation is usually a jury question, except in plain, palpable and undisputable cases.[14]

In *TGM Ashley Lakes v. Jennings*,[15] upon which the trial court relied, this Court decided that "liability does not attach if the employee committed the tort in a setting or under circumstances wholly unrelated to his employment."[16] *TGM* established that an employer may be held liable for torts committed outside the scope of employment, at least where a relationship exists between the employer and the tort victim.[17] "The question is not whether the servant was acting within the scope of his authority, but whether in view of his known characteristics such an injury by him was reasonably to be apprehended or anticipated."[18] Still, the act must be committed "within the tortfeasor's working hours or under the color of employment."[19]

In the case at bar, it is undisputed that the act was not committed within the tortfeasor's working hours. Therefore, the issue is whether the abduction of Underberg was committed "under the color of employment," or, on the other hand, under circumstances "wholly unrelated" to Fields's employment. Southern Alarm and ADT urge us to hold, as a matter of law, that the incident was "wholly unrelated" because the master-servant or agency relationship had ended and because Fields did not use his association with Southern Alarm and ADT as a ruse to gain entry into her home on the date he abducted her.

Southern Alarm and ADT's argument is an overly restrictive application of *TGM*. We are persuaded by cases from other jurisdictions that neither the termination of the employment relationship nor the passage of time break the causal connection as a matter of law. In *Tallahassee Furniture Co. v. Harrison*,[20] for example, a furniture deliveryman brutally assaulted a customer in her home nearly three months after delivering her couch by gaining entry on a pretext about

---

[13] (Citation omitted.) *TGM Ashley Lakes v. Jennings*, 264 Ga. App. 456, 459 (1) (a) (590 SE2d 807) (2003) (whole court).

[14] *Govea v. City of Norcross*, 271 Ga. App. 36, 44 (3) (608 SE2d 677) (2004).

[15] Supra.

[16] Id. at 459 (1) (a).

[17] Id. at 462 (1) (b), citing *Harvey Freeman & Sons v. Stanley*, 189 Ga. App. 256, 257 (1) (375 SE2d 261) (1988), aff'd in part and rev'd in part on other grounds, 259 Ga. 233 (378 SE2d 857) (1989).

[18] (Citation omitted.) *TGM Ashley Lakes*, supra at 460 (1) (b).

[19] Id. at 462 (1) (b).

[20] 583 S2d 744 (Fla. App. 1991).

a receipt. The assailant was a paranoid schizophrenic, a drug addict, and had an extensive criminal history. He was not asked to complete a job application.[21] In affirming the $2.5 million verdict returned for the plaintiff, the Florida court concluded that

> there *can* be a causal connection between an employment-related contact in the home by an unfit or dangerous employee and an injury inflicted on the occupant during a later, non-employment related entry into the home. Whether the employment-related contact and the later event in which the injuries occur are so separated by time or other circumstances that the former cannot reasonably be said to be a substantial factor in producing the result complained of depends upon the facts in each case. The issue of proximate cause is generally one for the jury unless reasonable persons cannot differ, in which case it becomes a matter of law for the court.[22]

In *McGuire v. Arizona Protection Agency*,[23] the defendant employer had contracted to install a burglar alarm in the plaintiff's home. The employee who installed the alarm had a history of criminal activity. After the alarm was installed and after the employee's job with the defendant had been terminated, the employee returned to the plaintiff's home, disconnected the alarm, and burgled the home.[24] The appeals court reversed the trial court's order dismissing the negligent hiring action, commenting as follows:

> In light of the sensitive nature of the work and the temptations and opportunity attendant thereto, defendant owed a duty to plaintiff to employ a responsible and trustworthy person, without a criminal proclivity that could reasonably be determined, to install the alarm system.[25]

We apply the reasoning of *Tallahassee Furniture Co.* and *McGuire* to the case at bar. Circumstantial evidence exists from which a jury

---

[21] Id. at 748-749 (I).

[22] (Citations omitted; emphasis in original.) Id. at 755 (IV). In Georgia, in the case of joint tortfeasors, an individual tortfeasor's conduct need only constitute a contributing factor, not a "substantial" factor, in the injury in order to be considered a proximate cause thereof. *John Crane, Inc. v. Jones*, 262 Ga. App. 531, 532-533 (1) (586 SE2d 26) (2003), aff'd, 278 Ga. 747 (604 SE2d 822) (2004).

[23] 125 Ariz. 380 (609 P2d 1080) (1980).

[24] Id. at 381.

[25] Id. at 382.

could infer that Fields's contact with Underberg was employment-related. Promotions representatives were encouraged to contact friends and neighbors on their own time to sell ADT security systems. Underberg and Fields resided in the same small town, and the policy empowered him to contact her. Also, Underberg filled out a form with personal information that she placed in a box earmarked for Southern Alarm and/or ADT. Southern Alarm and ADT argue that we may not consider this evidence because Underberg was not positive that the box belonged to Southern Alarm, and Payne testified that Southern Alarm did not participate in the event at which Underberg left the information. It is true that "[i]n passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."[26] In the case at bar, however, there is additional evidence of a causal link between Southern Alarm, Fields, and Underberg; namely, that Underberg repeatedly saw Southern Alarm's name and telephone number on her caller identification system during the time Fields solicited her business, and Southern Alarm was the only ADT franchise that ever tried to contact her. The repeated telephone contacts by Southern Alarm demand a finding that the company was aware of her name and address. A jury could infer that Southern Alarm had given this information as a potential lead to Fields.

Nor does the fact that Fields entered Underberg's home through an unlocked garage door instead of using his alleged status as an ADT salesman to gain entry render the abduction "wholly unrelated" to his employment.

> It remains to be seen in the development of the facts whether the surreptitious entry . . . was the result of the employment of the felon; whether the felon's background projected the risk; and whether defendant[s] had any knowledge of this background or could have acquired such knowledge. It remains to be determined whether defendant[s] took the precautions . . . reasonable [persons] would be required to take under the circumstances.[27]

A jury must determine whether Fields was acting under the color of his employment at the time of the kidnapping.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

---

[26] (Punctuation and footnote omitted.) *Bonner v. Southern Restaurant Group*, 271 Ga. App. 497, 500 (610 SE2d 129) (2005).

[27] *McGuire*, supra at 382.

Decided March 9, 2007 —

*Franklin, Taulbee, Rushing, Snipes & Marsh, James B. Franklin, Wesley C. Taulbee, Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for appellant.

*A. Martin Kent, Catherine M. Palumbo, Bouhan, Williams & Levy, Edgar P. Williams*, for appellees.