**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0079. ALLEN et al. v. ZION BAPTIST CHURCH OF
     BRASELTON et al.

BRANCH, Judge.

On the afternoon of October 24, 2010, after a homecoming festival at Zion

Baptist Church of Braselton ("Zion"), Joshua Humphrey sexually assaulted a 14-year-

old boy he had met while volunteering with the church's youth group. After the boy's

parents, the Allens, sued Zion and Humphrey, Zion moved for summary judgment,

which the trial court granted. On appeal from this ruling, the Allens argue that genuine

issues of material fact remain as to their claims that Zion negligently hired, retained,

and supervised Humphrey[1] and that Zion's spoliation of evidence also precludes a

---

[1] The Allens's complaint also alleged several other negligence claims against
Zion – ordinary negligence, negligent supervision of a minor, and negligent failure to
warn and to intervene.

grant of summary judgment. Although we agree with the trial court's conclusion that Zion did not engage in spoliation, we also find that questions of fact remain as to the Allens' various other negligence claims. We therefore reverse the trial court's grant of summary judgment to Zion.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003) (citations and punctuation omitted). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the non-movant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

Construed in favor of the Allens, the record shows that Zion's child protection policy, stated in the application given to aspiring volunteers, was that "all volunteers working with preschool, children or youth" were required to have maintained church membership for at least three months and to complete a membership class and an application, which included two reference forms and written consent to a background check. By early September 2010, Humphrey, who was 21 years old, began attending services at Zion. On Sunday, September 5, Humphrey turned in a visitor communication card indicating that he wanted to volunteer for the youth ministry. As

a result, Zion youth pastor Jason Ellis invited Humphrey to observe the youth meeting on Wednesday, September 8. Humphrey attended that meeting as well as the Sunday services on September 12.

On Wednesday, September 15, 2010, Humphrey gave his completed volunteer application, including two references, to Ellis. The church's administrative assistant found Humphrey's application suspicious, felt that there was "something not right" about him, and communicated these concerns to Ellis. Ellis did not take any further action on Humphrey's application, however.[2] After the September 15 youth meeting, the second attended by Humphrey, Ellis asked Humphrey to arrive early at the next meeting to assist with game night. At the game night, held on September 22, Humphrey handed out pizza, played catch football, ran laps around a makeshift trail, and took some boys to the weight room, with some of these activities taking place without any other adult present.

One of the two reference forms turned in by Humphrey bore a signature from Brandy Rowland, who later testified that she had declined to provide a reference for

---

[2] Ellis testified that he did not receive Humphrey's application until Wednesday, October 20, and that he did not examine the application at that time because he had to leave the church to attend to his father, who had become ill and was admitted to the hospital.

Humphrey, that she never filled out the reference form, and that her signature on the form was a forgery. Rowland averred that if the church had contacted her, which it did not, she would "never" have recommended Humphrey as a volunteer because she had "concerns that [Humphrey] may be a sexual predator." At her deposition, Rowland specified that Humphrey became acquainted with Rowland's boyfriend while working at a McDonald's restaurant in Braselton, that Humphrey was a frequent visitor to her house, and that he paid special attention to her second son, who was four years old in 2010. Rowland testified that on one night that year when she, her boyfriend, two of her children, and Humphrey were all sleeping together in the same room, Humphrey, who was sleeping on the floor, repeatedly "grabb[ed]" or "hugg[ed]" the "feet" of her second son, who was also sleeping on the floor, in an effort to "pull" or "slide" the boy's body "down" toward Humphrey. Rowland testified that this happened "four or five times," that Humphrey pretended to be asleep throughout, and that she repeatedly pulled her son away from Humphrey before pulling her son off the floor entirely and into bed with her. Although Rowland told her boyfriend that she did not want Humphrey "always around" her children, she never spoke to Humphrey about this nighttime incident, and did not bar him from spending time with her children in its aftermath.

As of October 2010, the 14-year-old victim had attended Wednesday night services at Zion three or four times as a guest of his friend D. H. Neither the victim nor any member of his family was a member at Zion, however. On one of his visits to Zion, the victim met Humphrey, describing him to his mother as a "cool" youth leader who liked the same video games the victim did. On Sunday, October 24, Zion held a fall festival that included food, children's games, and other activities. At around 2 p.m. that day, Humphrey called the victim and invited him to the festival. When the victim put his mother on the phone, Humphrey told her that he was a youth leader and asked if the victim could attend the festival. The victim's mother agreed; drove the boy and his friend J. C. to Zion, where adults and children were engaged in cleanup after the conclusion of the festival; and dropped the two boys off in the parking lot without speaking to Humphrey or any other adult.

The victim and J. C. then found D. H., who was helping his mother clean up. As D. H. and his mother prepared to leave, the victim, J. C., and Humphrey went upstairs and played pool in the youth room. While there, Humphrey told the boys that he wanted to show them "some Army moves" he learned from his drill sergeant. Humphrey then put the victim in a headlock, choked him until he passed out, and slapped him in order to revive him. Soon afterward, D. H. came upstairs to the youth

5

room and told Humphrey, the victim, and J. C. that his mother had told him that it was time to close the youth room. Humphrey led the victim and J. C. off church property to a wooded nature trail, where Humphrey and the victim began exchanging text messages on what Humphrey described to J. C. as "private stuff." The victim then told J. C. to wait some distance away while the victim and Humphreys talked to each other. When the victim dropped his pants to urinate, Humphrey began masturbating in front of him; moments afterward, J. C. first saw what appeared to be the victim performing oral sex on Humphrey and then saw Humphrey penetrate the victim from behind. After the victim moved away from Humphrey and pulled up his pants, he and Humphrey rejoined J. C.

Later that afternoon, the Allens called their son, the victim, and arranged to pick him and J. C. up at a fast food restaurant in Braselton. When J. C. told the Allens about the attack, the Allens confirmed his account with their son. The Allens also called D. H.'s mother, who told them that Humphrey was not a Zion youth leader, informed them that Ellis was, and obtained the Allens' permission to have Ellis call them. Ellis then called Mrs. Allen and told her that although the church had received Humphrey's application to become a youth pastor, it had not completed the background check on him required under church policy. Ellis also admitted that

6

Humphrey should not have been allowed to have unsupervised contact with youth at the church. Humphrey was arrested and charged with one count of attempted aggravated child molestation and three counts of child molestation. He pled guilty to two counts of child molestation and was sentenced to 20 years with 15 to serve.

In May or June 2011, before the Allens filed suit against Zion and Humphrey, a Zion volunteer began an audit of employee and volunteer files for the purpose of updating "all criminal background information." The volunteer's method was to pull files with information older than five years and to destroy files of individuals who were no longer employed by or volunteering for the church "in order to make room for current files." On July 20, 2011, the Allens filed suit against Zion and Humphrey, alleging that Zion was negligent when it hired, retained, and supervised Humphrey as a youth group volunteer and in its supervision of and failure to warn or intervene on behalf on the victim. In October 2011, the Allens served discovery requests seeking information on Zion's procedures for selecting and screening employees and volunteers, including Zion's personnel file on Humphrey, which was produced soon afterward. In March or April 2012, the same volunteer destroyed some personnel or volunteer files, including that of Ellis's administrative assistant, who had left her job

at the church. A Zion representative testified that the auditing volunteer knew that the Allens had filed suit against the church at the time she destroyed these files.

In May 2012, 10 months after filing suit, the Allens expanded their discovery request to include files on all persons who had served in Zion's youth ministry since 2007. Zion objected on the grounds that some files might not have been retained during a 2011 merger with another church, but produced the church's files on six individuals, some of whom had left the church.

Zion moved for summary judgment on multiple grounds, including that it did not owe the victim any duty of care, that it did not know of any reasonably foreseeable risk of harm, and that any failure to prevent Humphrey from associating with the victim was not the proximate cause of the victim's injuries. The trial court conceded for purposes of the motion that a jury question existed as to whether Humphrey's volunteer status gave rise to a duty of care as to Zion's "selection, supervision, and retention" of Humphrey, but granted Zion's motion nonetheless because "no evidence" showed that Zion "knew or should have known" of Humphrey's "propensity or proclivity to commit the criminal offense of sexual assault against a minor." The trial court also denied the Allens' motion for sanctions concerning Zion's destruction of personnel files on the grounds that the Allens had not created any

"meaningful link" between their claims and the alleged spoliation of Zion's personnel files, including that of Ellis's administrative assistant, and had not shown that Zion had acted in bad faith. The Allens appeal from both of these orders.

1. The Allens first argue that the trial court erred when it granted summary judgment because genuine issues of material fact remain as to their claims against Zion, including (a) Humphrey's status as a volunteer, (b) Zion's duty of care in hiring, retaining, and supervising him, and (c) whether any breach of such duty was the proximate cause of the victim's injuries. We agree.

(a) "[A]n employer must exercise ordinary care in the selection of employees, [and] must not retain them after knowledge of incompetency[.]" *Piney Grove Baptist Church v. Goss*, 255 Ga. App. 380, 383 (2) (565 SE2d 569) (2002) (citations omitted). Cases authorizing an employer's liability for negligent hiring and/or retention show that "in each instance," either "the tortious act occurred during the tortfeasor's working hours *or* the employee was acting under color of employment." *Harvey Freeman & Sons v. Stanley*, 259 Ga. 233, 233-234 (1) (378 SE2d 857) (1989) (emphasis supplied; citation and punctuation omitted). "Where a servant departs from the prosecution of his business and commits a tort while acting *without the scope* of his authority, the person employing him may still be liable if he failed to exercise due

9

care in the selection of his servant." *TGM Ashley Lakes v. Jennings*, 264 Ga. App. 456, 461 (1) (b) (590 SE2d 807) (2003) (citations and punctuation omitted; emphasis in original). "[L]iability does not attach[, however,] if the employee committed [a] tort in a setting or under circumstances wholly unrelated to his employment." Id. at 459 (1) (a) (citations omitted; emphasis supplied).

These same principles apply to the acts or omissions of non-profit organizations, including churches, when such an organization "solicits volunteers to perform projects on its behalf." *Piney Grove*, 255 Ga. App. at 383 (2) (citation and footnote omitted). "As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury." *Bull Street Church of Christ v. Jensen*, 233 Ga. App. 96, 99 (504 SE2d 1) (1998) (citation and punctuation omitted). "Such person is not an insurer of the safety of the child. He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm." Id. (citation and punctuation omitted).

Here, it is undisputed that the youth pastor asked Humphrey to assist him at the youth group's game night, that Humphrey attended that event with the tacit approval of Zion authorities, and that he was left alone with some youth during that event. It is

also undisputed that when, some weeks afterward, the victim's mother dropped off the victim on church property at the conclusion of the fall festival, adults were still engaged in cleanup in the aftermath of that event; that Humphrey met the victim at that time; and that the attack took place immediately afterwards next to church property. We therefore agree with the Allens and the trial court that a question of fact remains as to whether the attack took place under circumstances not "wholly unrelated" to Humphrey's employment as a youth group volunteer. See *TGM Ashley Lakes*, 264 Ga. App. at 459 (1) (a) (apartment complex could be held liable for negligent hiring and retention of maintenance worker who was given access to residents' keys and murdered a resident in her apartment); *Underberg v. Southern Alarm*, 284 Ga. App. 108, 115 (2) (643 SE2d 374) (2007) (alarm company salesman who gained entrance to a house through an unlocked door without using his status as an employee to do so did not render his subsequent abduction of a customer "wholly unrelated" to his employment).

(b) An employer may be liable for a failure to exercise due care in selecting, retaining or supervising an employee or volunteer when such a person "departs from the prosecution of his business and commits a tort while acting without the scope of his authority." *TGM Ashley Lakes*, 264 Ga. App. at 460 (1) (b) (emphasis supplied;

11

citation and punctuation omitted). As our Supreme Court has held, however, an employer may be held liable for such a tort "only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff," such that it is "reasonably foreseeable that the employee could cause the type of harm sustained by the plaintiff." *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (596 SE2d 604) (2004) (citation and punctuation omitted).

As we held in *Drury v. Harris Ventures*, 312 Ga. App. 545 (691 SE2d 356) (2010), an employer such as Zion cannot be held to be required "to independently verify each area of possible error" on a volunteer application because such a responsibility "would render employment decisions in even the most basic settings untenably fraught with potential liability." Id. at 548 (2). But our Supreme Court has noted that the question "[w]hether or not an employer's investigative efforts were sufficient to fulfill its duty of ordinary care is dependent upon the unique facts of each case." Id. at 864 n.4 (citation omitted). Specifically, "a jury may find that employers who fill positions in more sensitive businesses without performing an affirmative background or criminal search on job applicants have failed to exercise ordinary care

12

in hiring suitable employees, even absent a statutory duty to conduct such background searches." Id.

It is undisputed that Zion did not contact either of Humphrey's references before allowing him to have unsupervised contact with members of Zion's youth program. A jury could reasonably conclude on the record before us not only that such a program was a "more sensitive" matter requiring at least a check of references before Humphrey had unsupervised contact with youth, but also that had Zion had contacted Rowland, Zion would have been on notice of Humphrey's "propensity to inflict physical harm which ought to [have] arouse[d] suspicion and investigation." *Munroe*, 277 Ga. at 865; see also *Underberg*, 284 Ga. App. at 111 (1) (reversing a grant of summary judgment to alarm company on a negligent hiring and retention claim because the company owed a "heightened duty to ascertain whether individuals it hired, even briefly, to enter homes of unsuspecting persons for the purpose of selling security systems were suited for this purpose").

Zion seeks to escape this conclusion by citing *Poole v. North Ga. Conf. of the Methodist Church*, 273 Ga. App. 536 (615 SE2d 604) (2005), in which we affirmed the grant of summary judgment to a church as to liability arising from its minister's clandestine sexual relationship with plaintiff's wife, a relationship that was carried on

13

while the same minister was counseling plaintiff on his marriage. Id. at 537. In that case, while an investigation into the minister's past misdeeds would have revealed only that he had touched younger parishioners inappropriately, we concluded that because plaintiff had not produced evidence showing that the minister's "background information" would have placed the church on notice "that it was "reasonably foreseeable from [the minister's] tendencies or propensities that [he] could cause the type of harm sustained" – that is, the *violation of trust* involved in providing counseling to a husband while conducting a sexual relationship with his wife. We therefore concluded that plaintiff's negligent hiring claim failed as a matter of law. Id. at 538-539.

Here, by contrast, Zion allowed Humphrey unsupervised contact with children before it checked his references, one of which would have yielded some evidence that Humphrey had attempted to molest a child – the same category of criminal and tortious conduct of which these plaintiffs complain. Because a jury could reasonably conclude on this record that Zion failed to exercise reasonable care as to accepting Humphrey's services as a volunteer youth leader without contacting either of his references, the trial court erred when it granted Zion summary judgment on the Allens' negligent hiring, retention, and supervision claims. *Piney Grove*, 255 Ga. App.

14

at 384 (2) (church's failure to investigate a volunteer's qualifications for a construction job precluded summary judgment on plaintiff's negligent hiring claim); *Bull Street Church*, 233 Ga. App. at 100-101 (1) (affirming jury verdict in favor of plaintiff on negligent supervision claim when defendant church had some actual notice that the ten-year-old boy who sexually assaulted the four-year-old victim had previously exposed himself to another four-year-old girl).

(c) As the above discussion suggests, we cannot conclude that Humphrey's criminal act of molesting the victim was unforeseeable as a matter of law such that Zion's breach of care could not be held the proximate cause of that molestation.

"The causation element [of a negligent hiring and retention action] requires showing that, given the employee's dangerous propensities, the victim's injuries should have been foreseen as the natural and probable consequence of hiring the employee." *Underberg*, 284 Ga. App. at 113 (2). "Causation is usually a jury question, except in plain, palpable and undisputable cases." Id. Specifically, "[w]hether the employment-related contact and the later event in which the injuries occur are so separated by time or other circumstances that the former cannot reasonably be said to be a substantial factor in producing the result complained of depends upon the facts in each case." Id. at 114 (2). Further, although a 14-year-old's capacity to take

15

ordinary care "is presumptively that of an adult, the youth and inexperience of a child of this age are to be considered and the matter ordinarily left as a question of fact for the jury rather than as a matter of law for the court." *Harvey Freeman*, 259 Ga. at 235 (3). Thus "the jury may decide" in this case whether Zion's acts or omissions were the proximate cause of the victim's injuries. Id.

2. Our disposition of Division 1 necessarily revives the Allens' claims for ordinary negligence, negligent failure to supervise the victim, and negligent failure to warn the victim, all of which require proof of Zion's duty to avoid only reasonably foreseeable harms, breach of such duty, proximate causation (including contributory negligence), and damages, just as the Allens' claim for negligent hiring, retention, and supervision does. See *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982) (noting existence of a "general duty one owes to all the world not to subject them to an *unreasonable* risk of harm") (emphasis supplied). Although Zion also moved for summary judgment on the Allens's claims for negligent infliction of emotional distress, punitive damages, and attorney fees, the trial court mooted them on the ground that the Allens' negligence claim failed. Our reversal in Division 1 of the trial court's decision also revives these issues, which await disposition on remand.

16

3. The Allens also argue that the trial court erred when it granted summary judgment in the face of evidence that Zion destroyed personnel files including that of the administrative assistant employed at the time of the attack at issue. Specifically, the Allens object to the trial court's characterization of the evidence contained in those files as "cumulative" and ask that unspecified testimony "related" to this issue should be "excluded" on remand.

"A spoliation claim cannot be pursued unless the spoliating party was under a duty to preserve evidence." *Whitfield v. Tequila Mexican Restaurant No. 1*, 323 Ga. App. 801, 807 (6) (748 SE2d 281) (2013) (citations and punctuation omitted).

> [T]o meet the standard for proving spoliation, the injured party must show that the alleged tortfeasor was put on notice that the party was contemplating litigation. The simple fact that someone is injured in an accident, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation. In other words, "notice of potential liability is not the same as notice of potential litigation."

Id. (citations, punctuation and emphasis omitted), quoting *Clayton County v. Austin–Powell*, 321 Ga. App. 12, 17 (2) (740 SE2d 831) (2013). "The trial court has wide discretion in resolving spoliation issues, and we will not disturb its ruling absent abuse." *Whitfield*, 323 Ga. App. at 807 (6) (citations and punctuation omitted).

17

Even assuming that the volunteer who purged Zion's personnel files in March or April 2012 did so with notice of the Allens' suit, the Allens took the opportunity to examine the administrative assistant at her deposition, and her testimony was favorable to them, as when she testified that she found Humphrey suspicious and communicated her concerns to Ellis. Thus we cannot say that the trial court abused its discretion when it held that the Allens had established no significant connection between the allegedly spoliated evidence and the success or failure of their negligence claims. See *Sharpnack v. Hoffinger Indus.*, 231 Ga. App. 829, 831 (499 SE2d 363) (1998) (affirming grant of summary judgment when a plaintiff could not "establish any causal link between the failure of his underlying claims and the alleged misconduct by defendant").

*Judgment reversed. Barnes, P. J., and Boggs, J., concur.*