## A09A2168. DRURY v. HARRIS VENTURES, INC.
### (691 SE2d 356)

DOYLE, Judge.

Theresa Drury appeals from the grant of summary judgment to Harris Ventures, Inc. d/b/a Brunswick Staff Zone ("Staff Zone") as to her claims for negligent hiring and respondeat superior liability arising out of an attack by Reginald Holmes, a Staff Zone employee. Because the trial court correctly ruled that Staff Zone did not breach its duty in hiring the attacker and that the attack was outside of the scope of the employee's duties, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Drury's husband called Staff Zone requesting two workers to help his wife pull weeds in the yard of their home. The husband emphasized that the workers needed to be suitable for working in the yard with his wife at home alone. Staff Zone did not have such employees available on the day of the request,

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

but the next day the husband called again, and Staff Zone identified Holmes and his brother for the job, describing them as "trustworthy" — in part based on a manager's recollection of them working for Staff Zone on a few occasions in the past. On the day the men were dispatched, Staff Zone had the men fill out employment applications in which they denied having any criminal convictions, medical conditions, mental illnesses, or disabilities. They were then sent to work for Drury in her yard.

As later confirmed in his deposition, Holmes purposely failed to disclose to Staff Zone that he had been diagnosed with and treated for schizophrenia since 1985 and that he had not been taking prescribed medication that controlled his condition. While working in the yard for Drury, Holmes became agitated and annoyed at Drury, and he eventually attacked her from behind, grabbed her throat, pinned her to the ground, and moved up and down on her in a sexual manner as she lay face down. Holmes's brother explained that Holmes was off his medication and pulled Holmes off of Drury, who called her husband. The police were notified, and Holmes ultimately pled guilty to aggravated assault.

Drury sued Holmes and Staff Zone seeking damages based on several theories including, as to Staff Zone, respondeat superior and negligent hiring and retention. Staff Zone successfully moved for summary judgment, and Drury now appeals that order.

1. Drury contends that the trial court erred in concluding that Staff Zone was not liable under the respondeat superior doctrine. However, because the trial court correctly ruled that Holmes was not acting in his role as an employee during the attack, we disagree.

> Two elements must be present to render a master liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business. If a tort is committed by an employee not by reason of the employment, but because of matters disconnected therewith, the employer is not liable. Furthermore, if a tortious act is committed not in furtherance of the employer's business, but rather for purely personal reasons disconnected from the authorized business of the master, the master is not liable. Summary judgment for the master is appropriate where the evidence shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own. The question of whether the servant at the time of an injury to another was acting in the prosecution of his master's business and in the

scope of his employment is for determination by the jury, except in plain and indisputable cases.[2]

Here, Holmes attacked Drury while working as a temporary laborer for Staff Zone and pulling weeds in Drury's yard. There is evidence in the record that suggests that the attack occurred as Holmes grew more and more aggravated with Drury's critique of his work or work ethic. As noted by the trial court, this violent attack arising from a customer complaint is analogous to the facts in *Dowdell v. Krystal Company,*[3] in which this Court held that a restaurant employee's act of striking a complaining customer in the face was not connected to or in furtherance of the employee's cashier duties at the restaurant, and thus the employee had abandoned the restaurant's business when he engaged in such conduct.[4] Here, Holmes, a temporary day laborer, responded to Drury's criticism with violence; we hold that this conduct plainly and indisputably was not in the scope of his employment or in furtherance of Staff Zone's business. Further, to the extent that Holmes's attack can be characterized as sexual, "Georgia courts have consistently held that an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment."[5] We find this rule applicable here. Therefore, the trial court did not err in ruling that Staff Zone was not liable under a respondeat superior theory.

Despite Drury's argument to the contrary, we find the facts of this case to be distinct from those in *Ellison v. Burger King Corp.*[6] and similar cases,[7] in which employees assaulted customers. In *Ellison*, a restaurant "manager, who was charged with responding to customer complaints, . . . allegedly responded to a customer complaint in a violent manner while asking 'is everything ok?' "[8] Therefore, this Court held that the manager's allegedly violent response, which she testified was intended to reassure the customer, was carried out in the course of her employment as a manager and in furtherance of her employer's business.[9] Here, however, Holmes was a temporary day laborer without management authority and not

---

[2] (Citations and punctuation omitted.) *Leo v. Waffle House,* 298 Ga. App. 838, 842 (3) (681 SE2d 258) (2009).

[3] 291 Ga. App. 469 (662 SE2d 150) (2008).

[4] Id. at 471 (1).

[5] *Piedmont Hosp. v. Palladino,* 276 Ga. 612, 614 (580 SE2d 215) (2003).

[6] 294 Ga. App. 814 (670 SE2d 469) (2008).

[7] See, e.g., *McCranie v. Langdale Ford Co.,* 176 Ga. App. 281, 283 (335 SE2d 667) (1985).

[8] Id. at 820 (3) (b).

[9] See id.

charged with responding to customer complaints. It is undisputed that Holmes's violence was a result of his schizophrenia, and based on his role as a laborer assigned to pull weeds, the personal attack was in no way a part of his employment or in furtherance of Staff Zone's business. Therefore, *Ellison* and similar cases are inapposite in this context.

2. Drury also contends that the trial court erred by ruling as a matter of law that Staff Zone was not negligent in hiring Holmes and recommending him to her. We disagree.

> [A] defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff.[10]

Thus, in the case before us,

> the relevant question is whether [Staff Zone] knew or in the exercise of ordinary care should have known that [Holmes], the employee it hired and retained to perform duties involving personal contact with [Drury], was unsuitable for that position because he posed a reasonably foreseeable risk of personal harm to [people in Drury's position].[11]

This question is susceptible to resolution as a matter of law "only where the evidence is plain, palpable and undisputable."[12]

Here, the evidence is undisputed that Staff Zone inquired in its written application whether Holmes had been convicted of a crime, whether he suffered from mental illness, whether he had been treated by a psychologist, whether he had been treated for any mental condition, and whether there were any disabilities which might affect his performance. It is also undisputed that, while Holmes had no criminal history, he did not answer the mental illness questions truthfully, and he concealed his schizophrenia diagnosis and treatment to obtain employment. There is no evidence that Holmes had any prior violent outbursts or prior behavioral problems while working. Therefore, in light of the facts of this case, the evidence in the record is plain, palpable, and undisputable that Staff

---

[10] (Punctuation omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004).

[11] Id.

[12] Id. at 864 (2).

Zone did not know, nor reasonably should it have known, of Holmes's mental illness or tendency toward violence while untreated.

Drury argues that Staff Zone had a duty to orally confirm Holmes's job application answers, and that Staff Zone should not have relied on Holmes's written answers. However, she points to no case, nor are we aware of a case establishing such a duty on employers in a situation such as this where the employer had no reason to mistrust the application and where the employment was a routine job assignment to pull weeds at a residence.[13] To require an employer to independently verify each area of possible error on the application would render employment decisions in even the most basic settings untenably fraught with potential liability.[14] "Whether or not an employer's investigative efforts were sufficient to fulfill its duty of ordinary care is dependent upon the unique facts of each case,"[15] and in this case, dealing with temporary day laborers sent to pull weeds at a residence, Staff Zone's reliance on information written in an employment application was not negligent, particularly where there is no evidence that Holmes acted erratically prior to the attack on Drury.[16] Accordingly, this enumeration is without merit.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 1, 2010.

*Killian & Boyd, Roy J. Boyd, Jr.*, for appellant.
*Hawkins & Parnell, Matthew F. Barr*, for appellee.

---

[13] Drury relies in part on *Underberg v. Southern Alarm*, 284 Ga. App. 108 (643 SE2d 374) (2007). In that case, we held that a genuine issue of fact remained as to whether a security company had a duty to perform criminal background checks on its sales staff who entered customers' homes. That case, however, did not address the employer's reliance on written answers provided by employees. Nor do we find the facts in that case to be analogous to the hiring of a yard worker to pull weeds.

[14] See *Worstell Parking v. Aisida*, 212 Ga. App. 605, 606 (2) (442 SE2d 469) (1994) (rejecting plaintiff's argument that defendant had a duty to investigate parking lot attendant's past before they employed the attendant, despite indication of criminal history on application form).

[15] *Munroe*, 277 Ga. at 864 (2), n. 4.

[16] See *Worstell*, 212 Ga. App. at 606 (2).