**FOURTH DIVISION**
**DILLARD, J.,**
**BOGGS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 12, 2014**

# In the Court of Appeals of Georgia

A14A1121. MASTEC NORTH AMERICA, INC. v. SANDFORD
    et al.

BOGGS, Judge.

In this interlocutory appeal, Mastec North America, Inc. ("Mastec") and DirecTV, Inc.(California) ("DirecTV") appeal from the trial court's order denying their motion for summary judgment. They contend that no genuine issues of material fact exist as to whether a field technician was acting in the course and scope of his employment at the time he ran a stop sign and collided with another vehicle. For the reasons explained below, we agree and therefore reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the record and all reasonable

inferences in favor of the nonmoving party." (Citation and punctuation omitted.) *Effingham County Bd. of Tax Assessors v. Samwilka, Inc*., 278 Ga. App. 521 (629 SE2d 501) (2006). So viewed, the record shows that Warnock was employed by Mastec as a field technician to go to the home of DirectTV customers to install and repair satellite TV equipment provided by DirectTV. At the time of the accident, Warnock was driving a Mastec work van. Warnock authorized Mastec to deduct $40 per week from his paycheck for the privilege of driving the work van to and from his home at the start and end of each workday.

Warnock's personnel file included documents in which he acknowledged the following:

"WORKING TIME" is time spent performing any activities for the benefit of MasTec, such as:

1. Performing warehouse activities;

2. Performing Office Work;

3. Time spent training;

4. Performing installation or service actions at a customer location;

5. Door tagging a customer if not home during designated appointment window;

6. Travel time between jobs;

7. Attending company meetings;

8. Participating in training activities;

9. Traveling from the office to your first job and back to office after completing your last job.

The following activities are typically "NON-WORKING TIME":

1. Meals or other breaks lasting 30 minutes or longer;

2. Time spent getting to work in the morning;

3. Time spent traveling home after work.

*Questions and Answers*

**Q.** When does my work day begin?

**A**. The beginning of your work day usually begins when you arrive at the warehouse or the location where you receive your daily work orders from your supervisor. If you do not report to the facility or a remote

3

location, your work day typically begins when you arrive at the location of your first work order.

**Q.** If I do not go by the office, but drive directly from my house to my first job, is that drive time working time?

**A**. No. In that case, the drive time is non-work time.

. . .

**Q.** When does my work day end?

**A.** Your work day ends when you have completed all your work related activities for the day. If you report to warehouse at the end of the day, you should include travel time to the warehouse as working time. If you drive home after your last job, the time spent driving home [is] non-working time.

**Q.** I forgot to call in and close my last job, but remember and close it after I arrive at home. Is that working time?

**A.** Yes. Please include the time calling in and closing your work order on your timesheet. But, it is MasTec policy and your duty to close all work orders before leaving the customer's house. Failing to do so may result in disciplinary procedures.

Warnock testified that on the day of the accident, his two scheduled work orders "had fallen through." He received a telephone call from his supervisor directing him to a new job on Creekview Drive in Newnan, Georgia. Information about this job was also entered into a computer system that Warnock could access through a hand-held device. Warnock did not have a preprinted work order for this job, because it was assigned after the start of the work day.

When Warnock completed his assigned work at a customer location, he was required to make an entry into his hand-held device before leaving the customer location to close out the job. Warnock testified that he closed out the Creekview Drive job on his hand-held device; he did not recall any other paperwork associated with this job. Warnock testified that he could not recall ever closing out a job on his hand-held after returning home from his last job.

With regard to the time sheet that he was required to complete on a daily basis, Warnock testified that completing his time sheet was his last work activity of each work day. Warnock acknowledged that "most of the time" he completed his time sheet in his work van when the job was completed. When asked if he ever completed his time sheet after he arrived at home after the last job, Warnock replied, "I vaguely can say possibly that that could have happened. I remember, you know, in the van - -

5

that we basically completed each job. And at the of - - end of that job as our working time ended, we completed the time sheet. I remember most." He could not recall any specific occasion when he completed a time sheet at home.

An eyewitness to the accident testified that when she was picking up loose papers on the ground after the accident, Warnock told her, "don't worry about that paperwork, we do so much as it is, we have so much paperwork to do I get that whenever." Additional questioning during her deposition elicited the following response:

Q. And did Mr. Warnock say - - the driver of the DirecTV van - -


A. Uh-huh.

Q. - - say something to you about that he had more paperwork to do to finish - -

A. Yes. He said don't worry about that paperwork, I have more paperwork to do. We have so much to do. I'm not worried about that right now.

Q. Okay. And he indicated to you that he had more paperwork to do to finish his work?

6

A. I guess to finish his work.

Q. Okay. Well, that's what he said to you, correct?

A. Yes. Got more paperwork to do so . . .

Q. Okay. To finish his work?

A. To finish out his job, yes.

A Green Road Central Records satellite tracking device was installed on Warnock's work van that collected data about the start and stop time of a "trip" and whether high speeds were detected. The record includes a Green Road trip report for the date and time of the accident with an identification number of "57556" that does not include a driver's name for the date of the accident. It states the trip began at 6:59 p.m. and ended at 7:22 p.m. A 911 call reporting the accident was made at 7:23 p.m. While the trip report appears to have been produced by Mastec in discovery, no testimony or other evidence in the record explains how the trip data was collected or how the Green Road trip reports should be interpreted.

Mastec produced in discovery a weekly time sheet signed by Warnock with a handwritten date of "9/10/09" in the blank beside an entry for "Signature Date."

7

Warnock also handwrote an "end time" of 7:17 p.m. for his work on the date of the accident, which was September 10, 2009. Warnock testified that he did not have a specific recollection of his location when he signed the time sheet and he did not remember which of multiple potential clocks he may have looked at to determine the time before making his entry. He stated that he stopped at a gas station to get a snack after leaving the last customer's home before continuing on his way home. He explained that "perhaps [he] may have made a telephone call to [his] supervisor at some point." He stated that he would have signed the time sheet at 7:17 p.m. on September 10, 2009. After repeated questioning during his deposition, Warnock stated he did not have a recollection of where and at what time he completed the time sheet.

Frank Casto, a DirecTV employee who worked with Warnock on his last job before the accident,[1] testified that he witnessed the accident as he was following Warnock in a separate vehicle. He testified that both he and Warnock were headed home at the time of the accident. Casto testified that he did not see Warnock complete any paperwork at the conclusion of the job and agreed that it was possible to conclude that Warnock may have completed his time sheet at home after the accident. He stated

---

[1] Casto is also Warnock's father-in-law.

that he would occasionally close out a job on his hand-held device at home because he could not get a signal on it at the customer location.

Following the accident, Henry and Tina Sandford filed a complaint against Mastec, DirecTV, and Warnock, alleging negligence and gross negligence against Warnock and seeking a recovery from Mastec and DirecTV under a theory of respondeat superior. The trial court initially granted summary judgment in favor of Mastec and DirecTV on the issue of respondeat superior, but later changed its mind and denied summary judgment on this issue. After the trial court granted a certificate of immediate review, this court granted Mastec and DirecTV's application for interlocutory appeal.

1. Appellants contend that they are entitled to summary judgment in their favor because the undisputed evidence shows that Warnock was not acting within the course and scope of his employment at the time of the accident. We agree.

"When a servant causes an injury to another, the test to determine whether the master is liable is whether or not the servant was *at the time of the injury* acting within the scope of his employment and on the business of the master. [Cits.]" (Emphasis supplied.) *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979). Generally, an employee traveling to or from work "is not in the

course of his employment but rather is engaged in a personal activity." (Citations and punctuation omitted.) *Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011).

> Where a tort occurs as a result of a vehicle collision in which the employee was driving his employer's vehicle, however, the employer's liability must be analyzed under the burden-shifting framework espoused by the Supreme Court of Georgia in *Allen Kane's Major Dodge*, [supra]. Under this framework, a presumption arises that the employee was acting in the course and scope of his employment at the time of the collision, and the burden is then on the employer to show otherwise. An employer may overcome this presumption as a matter of law by presenting uncontradicted evidence showing that the employee was not acting in the course and scope of his employment. The employer is thereafter entitled to summary judgment unless "other facts" are proffered — that is, additional evidence other than the fact that the vehicle was owned by the employer — from which a jury could reasonably infer that the employee was acting within the course and scope of his employment when the accident occurred. Where the "other facts" are direct evidence, such is sufficient for the case to go to the jury. Where the "other facts" are circumstantial, however, such evidence will not defeat the employer's motion for summary judgment, unless it is sufficient to support a verdict in the plaintiff's favor.

(Citations and punctuation omitted.) *Dougherty Equipment Co. v. Roper*, 327 Ga. App. 434, 436 (1) (a) (757 SE2d 885) (2014).

Here, the appellants rebutted this presumption with testimony from Warnock and Casto that Warnock was driving home from his last job at the time of the accident. See *CGL Facility Mgmt. v. Wiley*, Ga. App. (Case No. A14A0455, decided July 16, 2014). The circumstantial evidence appellees rely upon to show that Warnock may not have been driving home is insufficient to overcome such direct evidence. Specifically, appellees point to evidence showing that Warnock should have turned left to drive directly home, rather than straight, at the intersection where the accident occurred. Warnock testified that he was using a GPS device to provide directions home after he completed his last job and that he "would not have gone straight if it wouldn't have told me to." "When a party attempts to create a jury issue using circumstantial evidence to counter uncontradicted direct testimony as to a certain fact, the circumstantial evidence must be inconsistent with the direct testimony and must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions."(Citations and punctuation omitted.) *Target Corp v. Amerson*, 326 Ga. App. 734, 743 n. 29(1) (h) (755 SE2d 333) (2014). Here, the circumstantial evidence was not inconsistent with the direct evidence that Warnock was driving home at the time of the accident, because the GPS device could have provided Warnock with directions for a different route to his home.

Appellees argue that issues of fact as to whether Warnock had outstanding paperwork to complete once he arrived home from his last job also preclude summary judgment on the issue of respondeat superior. This argument has no merit, because appellees must show that Warnock was acting within the scope of his employment *at the time of the accident*. In *Elam v. Ins. Co. of North America*, 134 Ga. App. 169 (213 SE2d 546) (1975), we rejected a similar argument and concluded that an employee was not acting within the scope of his employment while driving home, even though he intended to complete paperwork once he arrived at home. We stated,

> Even if the employee be considered "at work" when he reached his home where he worked on his employer's business, at most he was still only "en route to or from his work" at the time of the collision under the above authorities, there being no showing that he was in continuous employment, as a traveling salesman. [Cit.]

Id. at 170.

Appellees assert that we should affirm the trial court based upon our decision in *Littlefield Constr. Co. v. Bozeman*, 314 Ga. App. 601, 603-604 (1) (725 SE2d 333) (2012). We disagree. In *Littlefield*, the employer allowed employees to drive a company vehicle home provided they "kept the vehicle clean," and an employee drove a company vehicle home in order to wash it over the weekend, as well as to use

the vehicle and its trailer hitch on a personal errand. We concluded that an issue of fact existed as to whether the employee was driving the vehicle for the "employer's business *at the time of the collision* because although [the employee] had made a personal stop on the way home, at the time of the collision, [the employee] was driving the truck to his home so that it could be washed the next morning." (Emphasis supplied.) Id. at 605. Significantly, we noted that the exception to the general rule applies "where the employer has provided the employee a vehicle which enables the employee more conveniently to perform a duty for the employer." (CItations, punctuation and footnote omitted.) Id.

In contrast, here, Warnock was driving the truck home for his own convenience and he paid $40 a week to his employer for this privilege. And company policy clearly stated that he would only be paid for the time spent completing paperwork at home, not his driving time, if he failed to complete all of his paperwork before departing from the location of his last customer for the day as required by company policy. Based upon these distinguishing facts, we conclude that *Littlefield* does not control the outcome of this case.

Finally, we reject appellees' contention that Warnock was performing a special mission within the scope of his employment at the time of the accident. An exception

to the general rule that an employee is not acting within the scope of their employment while driving to and from work applies "where the employee undertakes a special mission at the direction of the employer." *Wright v. Pine Hills Country Club*, 261 Ga. App. 748, 751 (583 SE2d 569) (2003).

> Where the employee, before or after customary working hours, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer, and an injury arises en route from the home to the place where the work is performed, or from the place of performance of the work to the home, such injury is considered as arising out of and in the course of the employment.

(Citation and punctuation omitted.)Id. In this case, Warnock's last job involved performing his usual work and cannot be considered a special mission. See *Hargett's Telephone Contractors v. McKeehan*, 228 Ga. App. 168, 170-171 (491 SE2d 391) (1997).[2]

---

[2] Our decision in *Patterson v. Southeastern Newspapers*, 243 Ga. App. 241 (533 SE2d 119) (2000), does not require a different result. In *Patterson*, we concluded that issues of fact existed as to whether the employee was driving home from a special errand because the employee had been called in to work on a scheduled day off. 243 Ga. App. at 243-244 (1). Here, there was no evidence that Warnock was asked to work on a scheduled day off.

2. Appellants' remaining enumeration of error contesting the trial court's authority to grant a motion for reconsideration of a summary judgment decision is rendered moot by our holding in Division 1.

*Judgment reversed. Dillard, and Ray, JJ., concur*.