**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 28, 2023**

# In the Court of Appeals of Georgia

A22A1739. CAMPBELL et al. v. COURTESY FORD, INC., et al.

DILLARD, Presiding Judge.

Todd Campbell and his wife, Miriam Sanchez Flores,[1] filed suit against Robert Young and his employer, Courtesy Ford, Inc., for injuries he sustained as a result of an automobile accident, in which Young rear-ended his vehicle while driving a Courtesy-owned vehicle. Courtesy moved for summary judgment, which the trial court granted. On appeal, Campbell contends the trial court erred in finding that Courtesy was not liable under a theory of vicarious liability. For the following reasons, we affirm the trial court's judgment.

---

[1] For ease of reference, we will sometimes refer to Campbell and his wife collectively as "Campbell."

Viewed in the light most favorable to Campbell (*i.e.*, the nonmoving party),[2] the record shows that Young started working for Courtesy as a finance manager in October 2016. On May 24, 2017, Courtesy provided Young with a company car, which it referred to as a "demonstrator vehicle." There were no company logos, names, stickers, or signs on the front or side of the vehicle assigned to Young.[3] He was not required to use a demonstrator vehicle as a condition of his employment, but after choosing to do so, Courtesy had him sign the "Demonstrator Policy," which governed his use of the vehicle. This policy provides, in relevant part, that:

> The employee must accept the automobile model selected by the dealer for business reasons, rather than the one he/she prefers to drive.

> The assigned vehicle was selected by the dealer solely to promote his sales effort and to obtain high visibility of his product. The employee shall store the automobile at his/her home during evenings and off hours and be responsible for reasonable security precautions as well as striving for high visibility of the automobile in order to help advertise the dealership's product. As part of the high visibility effort, the employee

---

[2] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

[3] On the rear of the demonstrator vehicle provided by Courtesy to Young, there was a small sticker under the left tail-light with the dealership's name, as well as a license plate holder with the dealership name, phone number, and website address.

is required to use the demonstrator vehicle in his personal travels within the sales area (up to 75 [a] mile radius).

Employees are responsible for their own personal transportation to and from work daily.

All persons qualified for our demonstrator program understands [sic] that there will be a weekly or monthly charge deducted from payroll.

I understand and acknowledge that my use of any demonstrator is purely for the convenience and benefit of Courtesy. . . .

On January 22, 2018, Young arrived at the Courtesy dealership at 9:00 a.m. to begin his work day. Then, around 2:00 p.m., Young and Courtesy's finance director got into an argument over a commission, which ended with the finance director telling him to go home for the day. So, Young left work in his demonstrator vehicle, but rather than go straight home, he first drove approximately 45 minutes to a Mexican restaurant on Peachtree Industrial Boulevard to get takeout. And after picking up his food, Young began driving toward his home, traveling on Interstate 285 in heavy, slow-moving traffic. Then, before reaching his exit, he turned his attention away from the road for a brief moment—worried that his food was about to

3

slide off the seat—and looked back up in time to see that traffic had come to a stop but too late to avoid rear-ending Campbell's vehicle.[4]

Campbell and his wife later filed suit against Young and Courtesy, alleging that he suffered injuries and his wife loss of consortium as a result of Young's negligence. In doing so, they alleged Courtesy was liable for Young's negligence on the ground of vicarious liability. Both defendants answered, and discovery ensued. Then, at the close of discovery, Courtesy filed a motion for summary judgment, arguing that Young was not acting within the scope of his employment at the time of the accident, and therefore, Courtesy was not vicariously liable for his negligence. Campbell filed a response, and the trial court held a hearing on the matter before ultimately granting Courtesy's motion. This appeal follows.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] Importantly, if the movant meets this burden, the

---

[4] The trial court took judicial notice that the accident occurred within the 75-miles radius referenced in Courtesy's Demonstrator Policy.

[5] OCGA § 9-11-56 (c); *see Swanson*, 335 Ga. App. at 811 (explaining that summary judgment is appropriate when "the moving party can show that there is no

nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[6] And importantly, speculation which "raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment."[7] Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met.[8] In conducting this *de novo* review, we are charged, then, with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence, in the light most favorable to the nonmovant."[9] With these guiding principles in mind, we turn now to Campbell's sole claim of error.

---

genuine issue of material fact and that the movant is entitled to judgment as a matter of law" (punctuation omitted)).

[6] *Handberry v. Manning Forestry Svcs., LLC*, 353 Ga. App. 150, 151-52 (836 SE2d 545) (2019) (punctuation omitted).

[7] *Id.* at 152 (punctuation omitted).

[8] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[9] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

Campbell contends the trial court erred in granting summary judgment on his claim of vicarious liability against Courtesy. Specifically, he argues that genuine issues of material fact exist as to whether Young was acting within the scope of his employment at the time of the accident. We disagree.

Under the common law theory of vicarious liability, when a servant causes an injury to another, the test to determine if the master is liable is "whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master."[10] Put somewhat differently, if a tort is committed by an employee not by reason of the employment, but "because of matters disconnected therewith, the employer is not liable."[11] And if a tortious act is committed not in furtherance of the employer's business, but "rather for purely personal reasons disconnected from the authorized business of the master, the master is not liable."[12]

---

[10] *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979); *accord Mastec N. Am., Inc. v. Sandford*, 330 Ga. App. 250, 254 (1) (765 SE2d 420) (2014).

[11] *Hobbs v. Integrated Fire Protection, Inc.*, 357 Ga. App. 790, 792 (1) (850 SE2d 256) (2020) (punctuation omitted); *accord Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546 (1) (691 SE2d 356) (2010).

[12] *Hobbs*, 357 Ga. App. at 792-93 (1) (punctuation omitted); *accord Drury*, 302 Ga. App. at 546 (1).

As a result, generally speaking, an employee traveling to or from work is "not in the course of his employment but rather is engaged in a personal activity."[13]

That being said, when a tort occurs as a result of a vehicle collision in which the employee is driving his employer's vehicle, the employer's liability must then be analyzed under the burden-shifting framework fashioned by the Supreme Court of Georgia.[14] And under this analytical framework, "a presumption arises that the employee was acting in the course and scope of his employment at the time of the collision, and the burden is on the employer to show otherwise."[15] But an employer may overcome this presumption—as a matter of law—by "presenting uncontradicted

---

[13] *Sandford*, 330 Ga. App. at 254 (1) (punctuation omitted); *accord Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011); *see Archer Forestry, LLC v. Dolatowski*, 331 Ga. App. 676, 679 (3) (771 SE2d 378) (2015) (noting that, as a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer).

[14] *See Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010) (noting that when a tort occurs as a result of a vehicle collision in which the employee was driving his employer's vehicle, the employer's liability must be analyzed under the burden-shifting framework espoused by the Supreme Court of Georgia in *Allen Kanes Major Dodge, Inc. v. Barnes*, 243 Ga. 776); *Hobbs*, 357 Ga. App. at 793 (1) (same).

[15] *Hobbs*, 357 Ga. App. at 793 (1) (punctuation omitted); *see Hicks*, 286 Ga. at 865 (explaining that when a vehicle is involved in a collision, and it is shown the operator of the vehicle is in the employment of the vehicle's owner, a presumption arises that the employee was in the scope of his employment at the time of the collision, and the burden is then on the defendant employer to show otherwise).

7

evidence showing that the employee was not acting in the course and scope of his employment."[16] The employer is then "entitled to summary judgment unless other facts are proffered."[17] Of course, if the "other facts" presented consist of "direct evidence, that evidence is sufficient to present a jury question."[18] But when the "other facts" are circumstantial in nature, such evidence "will not defeat the employer's motion for summary judgment, unless it is sufficient to support a verdict in the plaintiff's favor."[19]

---

[16] *Hobbs*, 357 Ga. App. at 793 (1) (punctuation omitted); *see Hicks*, 286 Ga. at 865 ("The presumption that the servant is serving his master within the scope of his employment may, unless supported and corroborated by other evidence, be overcome by uncontradicted evidence.").

[17] *Hobbs*, 357 Ga. App. at 793 (1) (punctuation omitted); *see Hicks*, 286 Ga. at 865-66 ("When the uncontradicted testimony of the defendant and/or of the employee shows that the employee was not acting within the scope of his employment at the time of the accident, the plaintiff must show, in addition to the facts which give rise to the presumption that he was in the course of his employment, some other fact which indicates the employee was acting within the scope of his employment").

[18] *Hobbs*, 357 Ga. App. at 793 (1) (punctuation omitted); *see Hicks*, 286 Ga. at 866 (explaining that if a plaintiff's "other fact" is direct evidence that an employee *was* acting within the scope of his employment when the accident occurred, that is sufficient for the case to go to a jury).

[19] *Hobbs*, 357 Ga. App. at 793 (1) (punctuation omitted); *see Hicks*, 286 Ga. at 866 (explaining that when the plaintiff's "other fact" is circumstantial evidence, it must be evidence sufficient to support a verdict in order to withstand the defendant's motion for summary judgment).

Here, Young testified in his deposition that he was not acting within the course and scope of his employment with Courtesy at the time of the accident. Specifically, Young explained that he had been sent home by his supervisor, stopped off at a restaurant to pick up some takeout food, and was driving to his home when he rear-ended Campbell's vehicle. This uncontradicted evidence was sufficient to rebut the presumption that—because he was driving a Courtesy demonstrator vehicle—Young was acting within the scope of his employment at the time of the accident. Consequently, the burden shifted to Campbell to show some other fact demonstrating that Young *was* indeed acting within the scope of his employment.[20]

On appeal, Campbell counters—as he did below—that the language in Courtesy's Demonstrator Policy overcomes Young's testimony and creates a genuine issue of material fact as to whether Young was acting within the scope of his employment when driving the demonstrator vehicle. In particular, Campbell asserts that certain language in the policy—*e.g.*, "[a]s part of the high visibility effort the employee is required to use the demonstrator vehicle in his personal travels within the sales area (up to [a] 75 mile radius)" and "use of any demonstrator is purely for the convenience and benefit of Courtesy"—constitutes evidence that *any use* of the

---

[20] *See supra* notes 16-17 & accompanying text.

demonstrator vehicle by an employee within the 75-mile radius of the dealership falls within the scope of employment regardless of the employee's intended purpose or destination. We are unpersuaded for three reasons.

First, the Demonstrator Policy is an internal company document whose primary purpose is to govern an employee's work and *personal* use of a dealership vehicle. The notion that it somehow results in Courtesy assuming liability for *any* action taken by an employee in operating such a vehicle—no matter how far afield it may be from the scope of his or her employment—strains credulity and has no basis in Georgia law. Second, the Demonstrator Policy is hardly a model of clarity. On the one hand, it does contain language indicating that an employee's use of a company vehicle is for the benefit of the dealership. But the policy also uses other language that seemingly acknowledges the personal benefits derived by employees from using such vehicles and declares that they are responsible for: "paying any taxes imposed upon him/her as a result of personal use of the demonstrator [vehicle]," "any collision damage up to the amount of the insurance deductible on the demonstrator vehicle assigned to him/her," "their own personal transportation to and from work daily," and "any deductibles, losses, or damages to their assigned demonstrator not covered by [Courtesy's] insurance." Finally, even if Georgia law allowed for a document like the

10

Demonstrator Policy to impose a third party beneficiary type of liability on a company (which it does not), the basis for doing so here would be especially tenuous—*i.e.*, the incidental advertising benefit derived by Courtesy from an employee driving one of its demonstrator vehicles around or near the sales area. In any event, the minimal advertising benefit Courtesy derived from Young driving a demonstrator vehicle within the designated sales area—regardless of whether it was acknowledged in a written company policy—does not create a genuine issue of material fact in the face of Young's uncontradicted testimony that he was simply on his way home after picking up food and not acting within the scope of his employment when the accident occurred.[21] Accordingly, the trial court did not err in

[21] *See Dolatowski*, 331 Ga. App. at 680-81 (3) (reversing denial of summary judgment given evidence that at the time of the collision employee was using employer's automobile for a purely personal mission of his own in no way connected with the business of employer and not within the scope of his employment); *Sandford*, 330 Ga. App. at 255-56 (1) (reversing denial of summary judgment because evidence showed that employee driving employer's truck was merely going home at time of accident and not acting within the scope of his employment); *Trollinger v. Bob & Carolyn Ford, Inc.*, 180 Ga. App. 252, 252-53 (1) (349 SE2d 11) (1986) (holding fact that employee was using demonstrator vehicle to drive home from work, on a purely personal mission, and the fact that dealership obtained some incidental advertising benefit as result of demonstrator vehicle being operated by employee was not sufficient to raise genuine issue of material fact as to dealership's liability based on respondeat superior); *W.M.W., Inc. v. Collier*, 170 Ga. App. 882, 883-84 (318 SE2d 747) (1984) (reversing denial of employer's motion for summary judgment because fact that employer's name was printed on exterior of employer's vehicle was

11

granting summary judgment in favor of Courtesy as to Campbell's vicarious-liability claim.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

simply an incidental advertising benefit and did not make employee's use of the vehicle which resulted in the collision within employee's scope of employment); *Atlanta Blue Print & Photo Reproduction Co. v. Kemp*, 130 Ga. App. 778, 778-79 (204 SE2d 515) (1974) (reversing denial of summary judgment on grounds that fact employer's name was printed on exterior of truck, thereby conferring some incidental benefit to employer by way of advertisement, did not make employee's use of truck for a purely personal mission within employee's scope of employment); *see also Travelers Indem. Co. of Connecticut v. Peachstate Auto Ins. Agency, Inc.*, 357 FSupp3d 1259, 1264 (N.D. Ga. 2019) (Ray, J.) (holding that even though corporate vehicle was covered with advertising, that was still insufficient to demonstrate that it was being used in the course of the company's business). *Cf. Allen v. Milton Martin Enter., Inc.*, 197 Ga. App. 119, 119-20 (397 SE2d 586) (1990) (reversing grant of summary judgment because employer's requirement that its sales staff drive their company owned vehicles to work so that they would be available during the day for business purposes created issue of fact the employee was acting within the scope of his employment in driving to work).