**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 9, 2023**

# In the Court of Appeals of Georgia

A23A0430. PHILLIS GRAHAM, as surviving spouse of O'BRIAN
GRAHAM, Deceased v. HOSPICE SAVANNAH, INC.

DILLARD, Presiding Judge.

Phillis Graham—as surviving spouse of O'Brian Graham—filed suit against Keyana Mann and Mann's employer—Hospice Savannah, Inc.—for the fatal injuries her husband sustained as a result of an automobile accident, in which Mann's vehicle collided with her husband's motorcycle while Mann was on her way to work. Hospice Savannah answered, and later moved for summary judgment—which the trial court granted. On appeal, Graham contends the trial court erred in finding that Hospice Savannah was not liable under a theory of vicarious liability. For the following reasons, we affirm the trial court's judgment.

Viewed in the light most favorable to Graham (*i.e.*, the nonmoving party),[1] the record shows that Hospice Savannah provides hospice services and palliative care for patients around the Savannah area, and it employs certified nursing assistants ("CNAs") to help registered nurses with such care. Hospice Savannah's job description for CNAs provides: "A full time position works a 30-40 hour work week, rotating days, evenings, or weekends, with occasional requests to work additional days/hours/holidays as needed." The job description further requires CNAs to participate in "holiday rotation" and "use their personal vehicles to perform home visits [which] may require extensive driving."

Mann began her employment with Hospice Savannah as a CNA in January 2021. Her normal work shift began at 7:00 a.m. and ended at 3:00 p.m., Monday through Friday. Each morning, Mann commuted using her own vehicle to a health-care facility—known as "The Social"—for her regular work shift. Then, after caring for three patients at that facility, she typically drove to two other Hospice Savannah facilities to assist with other patients until her work shift ended. And under the Hospice Savannah policy, Mann—as with all CNAs—was reimbursed for any

---

[1] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

2

mileage incurred when driving between facilities after her shift began, but she was not reimbursed for mileage during her commute to or from work.

On Friday, May 28, 2021, Mann's supervisor at Hospice Savannah asked if she was available to work her normal Monday shift on May 31 (which was the Memorial Day holiday), and Mann agreed to do so. As was the case every Monday, Mann's work shift on May 31, 2021, started at 7:00 a.m. at The Social; and so she began her commute that morning at the normal time. But not far from The Social, Mann allegedly made a left turn against a traffic light and struck O'Brian Graham, who was operating his motorcycle, causing severe injuries that resulted in his death.

Phillis Graham—as surviving spouse—filed suit against Mann and Hospice Savannah, alleging her husband's death was the result of Mann's negligence and that Hospice Savannah was liable for Mann's negligence on the ground of vicarious liability. Both defendants answered, and discovery ensued (which included Mann's deposition). At the close of discovery, Hospice Savannah filed a motion for summary judgment, arguing that Mann was not on a special mission, so she was not acting within the scope of her employment at the time of the accident. Accordingly, Hospice Savannah asserted that it was not vicariously liable for her negligence. Graham filed a response, and the trial court held a hearing on the matter. The parties then filed

supplemental briefs, after which the trial court granted summary judgment in favor of Hospice Savannah. This appeal follows.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] Importantly, if the movant meets this burden, the nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[3] And speculation which merely raises a "conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment."[4] Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and this Court must satisfy itself that the

---

[2] OCGA § 9-11-56 (c); *see Swanson*, 335 Ga. App. at 811 (explaining that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law" (punctuation omitted)).

[3] *Handberry v. Manning Forestry Svcs., LLC*, 353 Ga. App. 150, 151-52 (836 SE2d 545) (2019) (punctuation omitted).

[4] *Id.* at 152 (punctuation omitted).

4

requirements of OCGA § 9-11-56 (c) have been met.[5] In conducting this *de novo* review, we are charged, then, with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence, in the light most favorable to the nonmovant."[6] With these guiding principles in mind, we turn to Graham's sole claim of error.

Graham claims the trial court erred in granting summary judgment on her claim of vicarious liability against Hospice Savannah. Specifically, she argues that genuine issues of material fact exist as to whether Mann's commute to work that holiday morning constituted a special mission and, thus, whether she was acting within the scope of her employment at the time of the accident. We disagree.

Under the common-law theory of *respondeat superior* (under which vicarious liability may be imposed), when a servant causes an injury to another, the test to determine if the master is liable is "whether or not the servant was at the time of the

---

[5] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[6] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

injury acting within the scope of his employment and on the business of the master."[7]

Put somewhat differently, if a tort is committed by an employee not by reason of employment, but "because of matters disconnected therewith, the employer is not liable."[8] Significantly, if a tortious act is committed not in furtherance of the employer's business, but "rather for purely personal reasons disconnected from the authorized business of the master, the master is not liable."[9] And under this theory, generally speaking, an employee traveling to or from work is "not in the course of his employment but rather is engaged in a personal activity."[10] Consequently, the

---

[7] *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979); *accord Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010); *Mastec N. Am., Inc. v. Sandford*, 330 Ga. App. 250, 254 (1) (765 SE2d 420) (2014); *Wood v. B & S Enterprises, Inc.*, 314 Ga. App. 128, 130 (723 SE2d 443) (2012); *see* OCGA § 51-2-2 ("Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.").

[8] *Hobbs v. Integrated Fire Protection, Inc.*, 357 Ga. App. 790, 792 (1) (850 SE2d 256) (2020) (punctuation omitted); *accord Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546 (1) (691 SE2d 356) (2010).

[9] *Hobbs*, 357 Ga. App. at 792-93 (1) (punctuation omitted); *accord Drury*, 302 Ga. App. at 546 (1).

[10] *Sandford*, 330 Ga. App. at 254 (1) (punctuation omitted); *accord Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011); *see Archer Forestry, LLC v. Dolatowski*, 331 Ga. App. 676, 679 (3) (771 SE2d 378) (2015) (noting that, as a general rule, a servant going to or from his work in an automobile

employer is not to be held liable for an injury occasioned while the servant is en route to or from his work.[11] But as with most rules, there is an exception to consider here.

Graham maintains that Mann's commute in her personal vehicle[12] constituted a "special mission," and so Mann was acting within the scope of her employment at the time of the accident with Graham's husband. The special-mission exception applies when

> the employee, before or after customary working hours, is on his way from his home to perform some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer, and an injury arises en route from the home to the place where the work is performed, such

---

acts only for his own purposes and not for those of his employer).

[11] *See Chattanooga Publ'g Co. v. Fulton*, 215 Ga. 880, 882 (3) (114 SE2d 138) (1960) (reiterating the general rule that a servant in going to or from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work).

[12] *See Stembridge v. Pride Util. Constr. Co., LLC*, 365 Ga. App. 296, 297-98 (878 SE2d 271) (2022) (noting that "[b]ecause Reed was driving his own car, rather than Pride's vehicle, at the time of the accident, there is no presumption that he was acting in the scope of his employment."); *accord Centurion Indus., Inc. v. Naville-Saeger*, 352 Ga. App. 342, 345 (834 SE2d 875) (2019); *compare Dougherty Equip. Co. v. Roper*, 327 Ga. App. 434, 436-437 (1) (a) (757 SE2d 885) (2014) (highlighting the burden-shifting analysis to be used when the presumption applies).

injury is considered as arising out of and in the course of the employment.[13]

Importantly, for this exception to apply, the special mission "must be made at the employer's request or direction."[14] But it is not enough that "the commute is 'incidental to' or 'in the interest of' the employer."[15] Rather, the narrow focus of

---

[13] *DMAC81, LLC v. Nguyen*, 358 Ga. App. 170, 174 (2) (853 SE2d 400) (2021) (punctuation omitted); *accord Centurion Indus. v. Naville-Saeger*, 352 Ga. App. 342, 345-46 (1) (834 SE2d 875) (2019); *see Mastec N. Am., Inc. v. Sandford*, 330 Ga. App. 250, 257 (1) (765 SE2d 420) (2014) (noting that an exception to the general rule that an employee is not acting within the scope of his or her employment while driving to or from work applies when the employee undertakes a special mission at the direction of the employer). The "special mission" exception, as specifically articulated here, first appears in Georgia jurisprudence in *Jones v. Aldrich Co., Inc.*, 188 Ga. App. 581, 583 (1) (373 SE2d 649) (1988). *See also Chappell v. Junior Achievement of Greater Atlanta, Inc.*, 157 Ga. App. 41, 42-43 (276 SE2d 98) (1981) (noting that "[t]he law is clear that in the absence of *special circumstances* a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer.") (emphasis supplied); *accord Bailey v. Murray*, 88 Ga. App. 491, 496 (77 SE2d 103) (1953).

[14] *DMAC81*, 358 Ga. App. at 174 (2) (punctuation omitted); *accord Centurion Indus.*, 352 Ga. App. at 345 (1).

[15] *DMAC81*, 358 Ga. App. at 174 (2).

8

inquiry is "on the mission itself and whether it is 'special' or 'uncustomary' and 'made at the employer's request or direction.'"[16]

In this case, the evidence showed that Mann was scheduled to work her normal weekday shift the morning of the accident, she began her commute that morning at the normal time, and was en route to The Social healthcare facility—as she did at the beginning of every weekday shift. And as always, she was not being compensated for her commute time. In fact, nothing about her actions that morning before the accident were special or uncustomary. To be sure, Mann had not initially been scheduled to work that day because it was the Memorial Day holiday; but Hospice Savannah requested that she do so the previous Friday, and this request was unremarkable as the job description for CNAs explicitly provides that working on holidays will occasionally be required.

---

[16] *Id.*; *see Centurion Indus.*, 352 Ga. App. at 346 (1) (explaining that "[t]he special mission exception requires that the errand or mission itself be a special or uncustomary one, made at the employer's request or direction." (punctuation omitted)); *Wood*, 314 Ga. App. at 131 (noting that the "application of the special mission exception requires that the errand or mission itself be a special or uncustomary one, made at the employer's request or direction, and that "[a]n employee cannot unilaterally determine to undertake a special mission. The directive must come from the employer.").

Even so, Graham argues that Hospice Savannah's request of Mann to work on a holiday created a genuine issue of material fact as to whether she was on a special mission, thus precluding summary judgment; and in support of this contention, Graham cites *Patterson v. Southeastern Newspapers, Inc.*[17] This argument is a nonstarter.

In *Patterson*, a salaried employee—who oversaw distribution of the newspaper and covered for absent drivers—was called into work outside of his normal schedule to fill in for a delivery person; and after completing his deliveries, he was involved in an accident while driving home.[18] In finding there was a genuine issue of material fact as to whether the employee was involved in a special mission, we explained that the employee was not "merely being called to report to his regular distribution point or to take care of his normal assignment[,] [but] [r]ather, on this particular occasion, he was called on short notice to go directly to a distribution point where there was a

---

[17] 243 Ga. App. 241 (533 SE2d 119) (2000).

[18] *See id* at 241-42 (1).

need."[19] As a result, *Patterson* specifically involved a mission at the employer's behest that *was* special or uncustomary.[20]

In stark contrast, Mann was not on "some special service or errand or the discharge of some duty incidental to the nature of [her] employment in the interest of, or under direction of, [her] employer at the time [she] commuted into work that morning."[21] Rather, she was commuting to her usual workplace to perform her usual Monday duties, albeit on a holiday—which was *explicitly* part of her regular job description. Given these circumstances, there was no genuine issue of fact as to whether the special-mission exception applied in this matter.[22] Indeed, especially as

---

[19] *Id.* at 242-43 (1).

[20] *See id.* at 242 (1) (noting the special-mission exception requires "that the errand or mission itself be a 'special' or uncustomary one, made at the employer's request or direction." (punctuation omitted)).

[21] *DMAC81*, 358 Ga. App. at 176 (2).

[22] *See id.* at 175-76 (2) (holding employee's earlier-than-usual commute to the deli—where he worked on the grill line—to get ready before making catering delivery, as requested earlier in the morning by his employer, was not a "special mission" for employer when he injured plaintiff during the commute, given that employee was already scheduled to work his regular shift and delivery was unconnected to his commute); *Centurion Indus.*, 352 Ga. App. at 346-47 (1) (concluding employee who was involved in collision while leaving work site on unpaid leave was not engaged in special mission for employer at time of collision because even though employee did not usually work at that work site, employee

11

to healthcare workers who are often required to work holidays, "[t]o expand the special mission exception to these facts would result in the exception swallowing the rule."[23] This, we decline to do.

Accordingly, for all these reasons, the trial court did not err in granting Hospice Savannah's motion for summary judgment.

*Judgment affirmed. Rickman, C. J., and Pipkin J., concur*.

---

regularly traveled to various work sites to perform work in ordinary course of employment); *Farzaneh*, 309 Ga. App. at 643 (affirming summary judgment to employer in a case involving employee who injured a pedestrian while driving his own vehicle to an assigned job site from his home by holding that "in commuting to an assigned job site as he did every day of the work week, [the employee] was not on an errand or mission that could be characterized as special or uncustomary" (punctuation omitted)); *Hargett's Tel. Contractors, Inc. v. McKeehan*, 228 Ga. App. 168, 171 (491 SE2d 391) (1997) (explaining that "an employee's trip is not a 'special mission' if it involves nothing more than travel to his or her usual place of work").

[23] *DMAC81*, 358 Ga. App. at 176 (2).